[No. 14832. Department Two. May 15, 1919.]

FRED KIENBAUM et al., Appellants, v. RATHFON
REDUCTION WORKS et al., Respondents.[1]

MINES AND MINERALS (16-21) — CONVEYANCES AND CONTRACTS — AGREEMENT TO SECURE ADVANCES—CONSTRUCTION. An agreement by parties making advances to complete the purchase of mining property, by which they promise to pay, on or before a certain date, a certain obligation of the company upon the following terms and conditions, viz: by paying a *pro rata* share of royalties received by them in the operation of the mine, up to the date mentioned, and if it is not then paid, the remainder to be assumed by the mining company, is not a binding contract to pay the account in full, but only to pay the *pro rata* share of the royalties received.

SAME (16-21). Where a deed to mining property was given to secure advances made by plaintiffs, who promised to pay a *pro rata* share of royalties received by them in the operation of the mine to be applied on a certain trustee account (one of the obligations of the company), the promise to pay the royalties is not satisfied by crediting the amount on the obligations of the company to the plaintiffs; but payment of the same for the benefit of the parties holding the trust account is a condition precedent to plaintiff's action to foreclose the deed as a mortgage securing the advances.

MORTGAGES (243) — FORECLOSURE — ATTORNEY'S FEES—REASONABLE AMOUNT. In a suit for the foreclosure of a deed to secure advances which did not provide for attorney's fees for its foreclosure, only the statutory costs as attorney's fees can be allowed.

BILLS AND NOTES (144)—ACTIONS—ATTORNEY'S FEES. In an action on a promissory note for $8,572 and a reasonable attorney's fee, in which the court found a balance due of $587, the sum of $300 is a sufficient allowance for attorney's fees.

Appeal from a judgment of the superior court for Ferry county, Neal, J., entered October 29, 1917, upon findings in favor of the defendants, in an action to foreclose a deed as a mortgage, tried to the court. Reversed.

*A. H. Kenyon,* for appellants.

*Geo. V. Alexander,* for respondents.

[1] Reported in 181 Pac. 10.

FULLERTON, J.—Some time prior to March 10, 1908, the county of Ferry became the owner, through tax foreclosure proceedings, of two certain mining claims, situated within its boundaries. On the day named, it leased the property to one Richard Mulroy for a term of two years, the lease providing that Mulroy should mine the property, ship and smelt the ores so mined, and turn over to the county a certain percentage of the smelter returns. The lease also granted Mulroy an option to purchase the property for a stated consideration, agreeing that the sums received as royalties should be credited on the purchase price if the option was exercised. Mulroy assigned his interests in the lease to one J. L. Harper, and Harper in turn assigned to a corporation known as the New Republic Company.

The option to purchase was not exercised by the lessee or his assigns, and on March 3, 1910, the county entered into an agreement with the New Republic Company for a sale of the property. In this agreement, the purchaser agreed to pay for the property the sum of $29,075.83, in the manner following: It agreed to enter into and hold possession of the property; operate the same; ship and smelt the ores taken from the mine; pay to the county a certain percentage of the net smelter returns for the first year, an increased percentage of such returns, for the first half of the second year, a further increased percentage, for the second half of the second year; and at the end of the second year, to pay to the county such balance of the purchase price as remained, after crediting thereon the sums received from the smelter returns; the county agreeing to deed the property to the purchaser or its assigns on the payment of the purchase price.

On September 23, 1910, the New Republic Company assigned its contract of purchase to D. W. Rathfon, A. L. Bradley and F. W. Bewley. As a consideration for the assignment, the assignees assumed the obligations of the assignor to the county of Ferry, and in addition to the royalties payable to the county by the terms of that contract, agreed to pay into the treasury of the New Republic Company a royalty of five per cent on the values of the smelted ores, until the expiration of the contract with the county, and if they then purchased the property, would pay to the New Republic Company the sum of $100,000. They further agreed to organize a holding company and assign to such company the contract of purchase. Pursuant to this agreement, the assignees organized a corporation under the name of Rathfon Reduction Works, and made the assignment as agreed; the corporation, as part of the consideration for the assignment, assuming the obligations of the assignors with the New Republic Company. The Rathfon Reduction Works entered into possession of and operated the property. It did not, however, meet the final payment due the county at the time it matured, and extensions of time were granted it by the county. The Rathfon Reduction Works seems not to have been at all times able to meet its current expenses, and Rathfon, Bradley and Bewley advanced moneys to its use. These sums were carried on the books of the corporation as the "Rathfon Trustee Account," and were the acknowledged obligations of the company, which it had agreed to repay with interest. At the time of the transfer by the New Republic Company to Rathfon, Bradley, and Bewley, the company owed certain obligations, the principal one of which was a note to John Hollis for the sum of $7,500. This note was expected to be liqui-

dated from the royalties agreed to be paid to the company in the agreement of transfer.

On January 7, 1914, the note and account mentioned were unpaid. The Rathfon Reduction Works seemed, also, to be unable to satisfy the county that the obligation remaining due to it on the purchase price of the property would ultimately be paid. This condition led to the following agreement between the appellants in the present action, who were then stockholders in the Rathfon Reduction Works, and that corporation, namely:

"AGREEMENT for which, for valuable consideration, the receipt whereof is hereby acknowledged, Fred Kienbaum, John Hollis and F. B. Babcock, parties of the first part and the Rathfon Reduction Works, a corporation, party of the second part, agrees each for himself, his heirs or assigns, to be firmly bound by these presents as follows, to wit:

"The parties of the first part undertake and agree that, on or before March 1st, A. D. 1916, they will pay or cause to be paid to the treasurer of Ferry county, all of the amount due and necessary to fully satisfy the requirements of the present lease and bond, thereby completing title and transfer by deed, in fee simple to the Rathfon Reduction Works all of the mining property named in said lease and bond, more particularly described as the Republic and Cecelia lode mining claims and mining claims and to pay the amount of one certain note for $7,500, given to John Hollis, trustee by the New Republic Co., and the amount of indebtedness represented in legal account credited to D. W. Rathfon trustee on the books of the Rathfon Reduction Works or the sum total of all money advanced by D. W. Rathfon, A. L. Bradley and F. W. Bewley due and not paid on or before March 1st, 1914, and all of which payments shall be made upon the following terms and conditions.

"Thirty per cent of all net smelter or bullion returns mined and milled from the above mentioned mining property shall be immediately paid to the Waverly

Exchange Bank for the benefit of the said parties of
the first part under the terms of this agreement, on
all ore shipped or milled after March 1st, 1914. Net
smelter returns shall mean the amount received after
freight and treatment charges have been deducted and
net bullion returns shall mean the amount received
after deducting reasonable milling charges.

"A correct account of all amounts and interest ac-
cruing on said John Hollis trustee note, D. W. Rath-
fon trustee account and the amount due and payable
to Ferry county, on lease and bond shall be kept and
payments made, set aside or credited as follows: Con-
sidering at date of each payment the amount due and
not yet paid by the company to or for Ferry county
John Hollis trustee note and D. W. Rathfon trustee
account as each a separate unit; then pay to each
party or fund its respective *pro rata* share as repre-
sented in the aggregate of all the amounts; excepting
always that 5% of such net smelter or bullion returns
which are presumably paid to the New Republic Co.,
shall first be deducted from any payment on the John
Hollis note and the balance of note pro rated.

"If any time it shall be necessary for the parties
of the first part to advance money to complete pay-
ment on lease and bond, then the said party of the
second part shall cause to be executed a note and
first mortgage on the above mentioned property cov-
ered by lease and bond in favor of the said parties of
the first part for the whole amount due them; note
and mortgage due and payable on or before March
1st, A. D. 1916, and to bear interest at the rate of 10%
per annum.

"On March 1st, A. D. 1916, the party of the second
part shall assume and pay any remaining balance on
said John Hollis trustee note and D. W. Rathfon trus-
tee account, thereby relieving the said party of the
first part from any further responsibility in the mat-
ter.

"The said party of the second part shall continue
to operate and carry on the business of mining the
property during the life of this agreement, under the

same restrictions, conditions and method of mining as required by the present lease and bond.

"The party of the first part shall at all times protect the party of the second part in legal possession of the said mining property, and if any payments are due or necessary to be made to Ferry county to fully protect the company's interests, then any such amount of payment may be made directly to said Ferry county and the remainder paid to the Waverly Exchange Bank as above mentioned.

"For and in consideration of the above mentioned guarantee, possible payments and services, the said Rathfon Reduction Works, party of the second part, will properly issue to the Waverly Exchange Bank 82,124 shares of the capital stock of said company and deliver same to said bank under proper escrow agreement to hold such stock until all of the above mentioned indebtedness shall be paid; and then deliver to the order of the above mentioned parties of the first part.

"Signed and executed at Republic, Wash., this 6th day of January, A. D. 1914."

Pursuant to the agreement, the appellants, on March 3, 1914, paid to Ferry county, on the purchase price of the property, the sum of $5,000, and on July 22, 1914, paid the further sum of $16,950, the balance due thereon, taking a deed from the county directly to themselves. The Rathfon Reduction Works continued to operate the property for some time longer, paying in royalties to the Waverly Exchange Bank under the provisions of the agreement set forth the sum of $10,-300. Out of this sum, the appellants paid a portion of the Hollis note and certain other obligations, but paid no part thereof on the Rathfon trustee account. On this account there was due on January 6, 1914, the sum of $9,060.23.

The appellants treated the deed from Ferry county to them as security for the sums advanced by them

for the use of the Rathfon Reduction Works, and on
November 22, 1916, began the present action to fore-
close it as a mortgage. In their complaint, the appel-
lants set forth the several agreements hereinbefore
mentioned, including the agreement between them-
selves and the Rathfon Reduction Works; set forth
their advancements to the county of Ferry, made in
pursuance of the agreement; alleged ownership of the
Hollis note, and that there remained due and unpaid
thereon the sum of $8,572.76, and that the sum of
$1,500 is a reasonable sum to be allowed as attorney's
fees for bringing suit thereon. While they alleged
generally a full performance of the terms of the
agreement, no mention was made of the Rathfon trus-
tee account, nor was mention made of the $10,300
paid to the Waverly Exchange Bank for their use.
The prayer was for the recovery of $35,801.88; for
an attorney's fee of $1,500, and a foreclosure of the
lien and a sale of the property thereunder in the usual
manner. The answer put in issue certain of the alle-
gations of the complaint, set up the several agree-
ments hereinbefore outlined, and pleaded a breach on
the part of the appellants of the agreement entered
into between the parties hereto. It also set forth the
payment of the royalties to the Waverly Exchange
Bank pursuant to the last named agreement, that the
appellants had failed to account for the same, and
that it had not paid the Rathfon trustee account. The
prayer was for relief appropriate to its allegations.
A reply was filed putting in issue the affirmative alle-
gations of the answer.

On the issues as framed, the cause was tried to the
court. At the conclusion of the evidence, the court
found the deed from Ferry county to the appellants
to be a mortgage and security for the sums advanced

and agreed to be advanced by the appellants and that the appellants were entitled to a decree foreclosing it as a mortgage. Striking the account between the parties, the court further found that there remained due on the Hollis note, after applying the payments thereon applicable thereto, the sum of $587.14; that the sums paid to the county of Ferry with interest, amounted to the sum of $27,206.27; that the appellants had agreed to pay the Rathfon trustee account and had not paid the same, and that the amount due thereon with interest was $11,956.31; and that the appellants were entitled to an attorney's fee of $300. A decree was entered for the aggregate of these sums; the court decreeing, however, that no execution or order of sale should be entered on the decree until the appellants should pay to the respondents the amount of the Rathfon trustee account.

On this appeal, the appellants assign that the court erred, (1) in holding that they were obligated to pay the Rathfon trustee account; (2) in holding, if they are obligated to pay such account, that the sum due them was the amount found by the court, the amount being less than the sum actually due; and (3) in holding that the sum of $300 was a reasonable sum to be allowed as attorney's fees.

The appellants contend, in support of the first assignment of error, that the contract between the parties, by its express terms, does not obligate them to pay the Rathfon trustee account. This contract we have hereinbefore set out in full. Its perusal will show that it is somewhat inartificially drawn. In the first paragraph, after the introductory matter, it seems to be expressly provided that the appellants will pay the account on or before March 1, 1916. But this is followed by a statement that payments "shall be made

on the following terms and conditions,'' and this clause, by provisions for the operation of the mine by the respondents; for the payment to the Waverly Exchange Bank for the use of appellants of certain royalties, and for the prorating by the appellants of these royalties on this account with others named. Then follows an explicit provision that on ''March 1st, A. D. 1916, the party of the second part Rathfon Reduction Works shall assume and pay any remaining balance on said . . . Rathfon trustee account, thereby relieving the said party of the first part [the appellants] from any further responsibility in the matter.'' This, it seems to us clear, is not an absolute agreement to pay the account. The appellants but promised to pay thereon a *pro rata* share of the royalties they should receive from the operation of the mine up to a certain date; and, if it was not then paid, the remainder was to be assumed by the respondents. As between these parties, therefore, there was no binding agreement to pay the account.

We are aware that the trial court rested its conclusion on the acts of the parties, construing those acts to be an interpretation of the contract in accordance with the respondents' contention. But we can find no justification in the evidence for this conclusion. The appellants' acts, it seems to us, indicate a repudiation of any obligation with respect to the account rather than an agreement to pay it.

This conclusion, however, does not mean that the appellants are to escape liability entirely with respect to the account. They did not pay thereon the *pro rata* share the account was entitled to receive of the royalties, and for this they are liable. Nor can it be satisfied by crediting the amount due on the obligation of the respondents to the appellants. In the execution of

the contract, the parties recognized the fact that the account was due to third persons who had advanced the money which it represented to the respondents, and recognized the fact that it was to be applied to their uses. Such sums as were received from the royalties, therefore, must be paid to the respondents for the benefit of the persons making the advancement as a condition precedent to a decree of foreclosure.

In arriving at the amount due, the court credited the entire amount received from the royalties to the Hollis note. Owing to the view the court took of the contract, this was a proper disposition of that fund. Since we hold that a part of this fund is payable to the trustee account, the credit on the Hollis note is too large by the amount rightly payable to the trustee account.

The attorney's fee allowed was sufficient. The deed, even as construed as a mortgage, did not carry with it an attorney's fee for its foreclosure other than the attorney's fee allowed as a part of the statutory costs. The only part of the obligation sued upon which provided for an attorney's fee in case of suit was the Hollis note, and for suit thereon the attorney's fee allowed was reasonable.

The decree entered is, therefore, reversed and the cause remanded with instructions to ascertain the amount due on the sums advanced by the appellants to Ferry county, with interest, ascertain the amount due on the Hollis note, and credit thereon the sums paid the Waverly Exchange Bank as royalties for the use of the appellants, less the *pro rata* share thereof payable to the Rathfon trustee account; require the appellants to pay into court, for the use of the beneficiaries of the trustee account, the last mentioned sum, and when it is so paid, enter a decree of fore-

closure in the usual form for the sums ascertained to be due.

PARKER, MOUNT, HOLCOMB, and MAIN, JJ., concur.